UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NATASHA A. ROBINSON O/B/O
A.A.M.,                                                  **DECISION AND ORDER**

                          Plaintiff,                                 1:19-CV-06172(JJM)

v.

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

        This is an action brought pursuant to 42 U.S.C. §1383(c)(3) to review the final determination of defendant Andrew M. Saul, the Commissioner of Social Security, that plaintiff's minor child was not entitled to Supplemental Security Income ("SSI"). Before the court are the parties' cross-motions for judgment on the pleadings [8, 13].[1] The parties have consented to my jurisdiction [15]. Having reviewed the parties' submissions [8, 13, 14], the case is remanded for further proceedings consistent with this Decision and Order.

## BACKGROUND

        The parties' familiarity with the entire 354-page record is presumed. In May 2015, plaintiff, A.A.M.'s mother, applied for SSI on A.A.M.'s behalf, alleging that he was disabled since November 1, 2014 because of attention deficit hyperactivity disorder ("ADHD") and "aggressive behavior". Administrative Record [7], pp. 127-31, 156. At that time, A.A.M. was ten years old. After the application was denied, an administrative hearing was conducted

---

[1]     Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

before Administrative Law Judge ("ALJ") Michael Devlin on November 28, 2017, at which plaintiff and A.A.M. testified. Id., pp. 35-49. Plaintiff was represented by counsel at the hearing. The record contains several relevant opinions of A.A.M. functional limitations:

    -- In December 2015, A.A.M.'s fourth grade teacher, Ms. Bickem,[2] assessed A.A.M. as reading at a 3.3 grade level, math at a fourth grade level, and writing at a third grade level. Id., p. 185. He was also receiving special education services. Id. She also completed a form questionnaire addressing A.A.M.'s capacity in the five domains of functioning, including acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for himself. Under each domain, Ms. Bickem rated A.A.M.'s capacity for ten related functions on a scale from "no problem" to "a very serious problem". Id., pp. 187-88. Most notably, Ms. Bickem assessed plaintiff with a "serious problem" in the function of expressing ideas in written form - one of ten functions measured on the form under the domain of acquiring and using information. Id., p. 186. She also noted that "[i]t is sometimes difficult to decipher the meaning of his written work". Id.;

    -- In August 2015, a state agency physician found that A.A.M. had less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for oneself, but no limitation in the remaining domains. Id., pp. 50-58;

    -- In August 2015, plaintiff reported to the consultative examiner, Christine Ransom, Ph.D., that "[w]hen A.A.M. is on the medication he is able to sit still, focus his attention and anger management problems are in control . . . . [She] denied general behavior problems, attention, concentration, hyperactivity, depression, anxiety and thought disorder while

---

[2]     Her first name is not included in the record.

the child is appropriately medicated". Id., p. 256. Dr. Ransom found that plaintiff's ADHD was "currently in remission while appropriately medicated". Id., p. 258;

-- Plaintiff reported to A.A.M.'s primary care physician, Sarah Kathleen Collins-McGowan, M.D., in December 2015 and January and September 2016 that A.A.M. was doing "well" or "great" with medication. Id., pp. 292-93, 299. When A.A.M. was next seen by Dr. Collins-McGowan in July 2017, plaintiff reported that Adderall "helped him sit and focus to get his work done. But does not do much for his behavior". Id., p. 300. At that time, Dr. Collins-McGowan noted that A.A.M. "continues to have significant problems in school, some of which may be related to suboptimally treated ADHD, some of which is probably more oppositional defiant type behavior", and increased his dosage of Adderall. Id., p. 302. In September 2017, Dr. Collins-McGowan completed a childhood disability evaluation form indicating that A.A.M. had marked limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others. Id., pp. 304-09. At that time, A.A.M, had an Individualized Education Program ("IEP"),[3] and his most recent testing in fifth grade placed him at a third grade math and reading level. Id., p. 306. She also noted that A.A.M. "has significant difficulty staying on task. He is frequently distracted . . . . This is noted in his most recent IEP". Id.; and

-- In November 2017, plaintiff's sixth grade teacher, Gilbert Doway, completed the same form as Ms. Bickem. At that time, A.A.M. was receiving four hours of tutoring twice a week. Id., p. 192. Mr. Doway assessed A.A.M. with no problem acquiring and using information and no more than slight problems in attending and completing tasks. Id., pp. 193-94. The portion

---

[3] "An IEP is an individualized program for a disabled child that guides the structure and content of the child's special-education curriculum, and specifies the individual services the child will receive from his or her school." Scott v. Commissioner of Social Security, 2020 WL 1489830, *2 n. 5 (S.D.N.Y. 2020).

of the form addressing the domain of interacting and relating with others was not fully completed by Mr. Doway, who offered the following narrative:

> A.A.M. "flourishes under my very structured, high expectation and respectful environment. When that type of environment is not created, he can be quite troublesome . . . . I am concern[ed] about that when he leaves me an[d] enters the 7th grade". [7], p. 195.

In his April 3, 2018 decision, ALJ Devlin determined that A.A.M.'s severe impairments were ADHD, oppositional defiant disorder, and speech/language delay. Id., p. 13. He also found that A.A.M. did not have an impairment or combination of impairments that equaled or functionally equaled a listed impairment, concluding that he had less than a marked limitation in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for oneself, but no limitation in the remaining domains. Id., pp. 18-24. In doing so, ALJ Devlin gave significant weight to all of the functional limitation opinions, other than Dr. Collins-McGowan's opinion, which he afforded "little weight". Id., p. 17.

Since A.A.M did not have an impairment or combination of impairments that resulted in either "marked" limitations in two domains of functioning or an "extreme" limitation in one domain of functioning, ALJ Devlin concluded that he was not disabled from May 29, 2015, the date of the SSI application, through the date of his April 3, 2018 decision. Id., p. 24.

The Appeals Council denied plaintiff's request for review (id., pp. 1-4), and thereafter she commenced this action.

# DISCUSSION

In seeking remand for a calculation of benefits or alternatively for further administrative proceedings, plaintiff argues that ALJ Devlin failed to provide good reasons for affording little weight to the opinion of Dr. Collins-McGowan, and that his functional equivalence finding was not supported by substantial evidence. Plaintiff's Memorandum of Law [8-1], Points 1 and 2.

**A.    Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

**B.    Infant Disability Standard**

A claimant under 18 years of age, such as A.A.M., is "disabled" under the Social Security Act if he has a medically determinable physical or mental impairment (or combination of impairments) that result in "marked and severe functional limitations . . . which has lasted or can be expected to last for a continuous period of not less than 12 months". 42 U.S.C. §1382c(a)(3)(C). Under the applicable regulations, A.A.M. must show that he is not working, that he has a "severe" impairment or combination of impairments, and that the impairment or

combination of impairments is of listing-level severity - *i.e.*, medically or functionally equal to the severity of a listed impairment. 20 C.F.R. §§416.924(a)-(d).

Functional equivalence of limitations is evaluated on six domains: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being.  20 C.F.R. §§416.926a(b)(1)(i)-(vi).  Marked limitations in two domains of functioning or an extreme limitation in one domain constitutes a functional equivalent to a listed impairment. Id. §416.926a(d). "Marked" limitation for a domain is when a claimant's "impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities." Id. §416.926a(e)(2)(i).

**C.     Did ALJ Devlin Fail to Properly Weigh Dr. Collins-McGowan's Opinion?**

A treating physician's opinion is accorded "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record". 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2).[4]  If the treating physician's opinion does not meet this standard, the ALJ may discount it, but is "required to explain the weight it gives to the opinions of a treating Physician . . . .  Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). S*ee*

---

[4]     "The Social Security Administration adopted regulations in March 2017 that effectively abolished the treating physician rule; however, it did so only for claims filed on or after March 27, 2017." Montes v. Commissioner of Social Security, 2019 WL 1258897, *2 n. 4 (S.D.N.Y. 2019). This claim was filed before that date.

*also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "The ALJ must consider, *inter alia*, the '[l]ength of the treatment relationship and the frequency of examination'; the "[n]ature and extent of the treatment relationship'; the 'relevant evidence . . . particularly medical signs and laboratory findings,' supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." Burgess v. Astrue, 537 F.3d 117 (2d Cir. 2008) (*citing* 20 C.F.R. 404.1527(d), now (c)). The Second Circuit has advised that the courts should not "hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion". Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004).

   Here, ALJ Devlin gave "little weight" to the opinion of Dr. Collins-McGowan, explaining that:

> "[t]he observations of the claimant's teachers and the results of the consultative examination are inconsistent with the limitations in Dr. Collins-McGowan's opinion. Dr. Collins-McGowan's treatment notes indicate that when she saw the complainant on July 11, 2017, she had not seen the claimant for almost a year . . . . Further, her opinion is based solely on the reports for [sic] claimant's mother, rather than her own observations . . . . Accordingly, the opinion of Mr. Doway, who observes and interacts with the claimant all day every weekday, is given more weight". [7], pp. 17-18.

   The opinion of a teacher, a "non-medical source", may "'outweigh the opinion from a medical source,' when the teacher 'has seen the individual more often and has greater knowledge of the individual's functioning over time and if the [teacher's] opinion has better supporting evidence and is more consistent with the evidence as a whole'". C.L.G. v. Commissioner of Social Security, 2016 WL 836236, *8 (N.D.N.Y.), adopted, 2016 WL 830738 (N.D.N.Y. 2016) (*quoting* SSR 06–03p, 2006 WL 2329939, *6). [5]

---

[5] SSR 06-03p was rescinded for claims filed on or after March 27, 2017. *See* Wenner o/b/o A.R.L.D. v. Commissioner of Social Security, 2019 WL 7288507, *3 n. 4 (W.D.N.Y. 2019).

The regulations define a "marked" limitation as interfering "seriously" with functioning. See 20 CFR 416.926a(e)(2)(i). Among the severity ratings on the form completed by the Ms. Bickem and Mr. Doway is one for "a serious problem", which appears to correspond to a marked limitation. *See* Bishop o/b/o K.M.B. v. Commissioner of Social Security, 2017 WL 4512163, *8 (N.D.N.Y. 2017) ("the regulations seem to indicate that . . . serious problems would be equivalent to marked limitations").

As discussed above, Mr. Doway's assessment reflected generally benign findings (*i.e.*, no more than slight problems) in many of the domains. However, he did not complete the portion of the form for the domain of interacting and relating with others, and instead stated that A.A.M. "flourishes under my very structured, high expectation and respectful environment. When that type of environment is not created, he can be *quite troublesome* . . . . I am concern[ed] about that when he leaves me an[d] enters the 7th grade". [7], p. 195 (emphasis added). This is also reflected in A.A.M.'s IEP for the 2017-18 school year, which indicates that he "needs a structured classroom setting that has limited distractions". Id., p. 330. Earlier, Ms. Bickem similarly noted that A.A.M. "sits close to the front so he can stay focused and on task". Id., p. 186.

Plaintiff argues that this indicates the "need for help and support, and this is consistent with, rather than inconsistent with, Dr. Collins-McGowan's opinion of marked limitations in 3 domains". Plaintiff's Memorandum of Law [8-1], p. 21. In support of that argument she relies on Social Security Ruling ("SSR") 09-02p, which states that information about any supports that children receive:

> "can be critical to determining the extent to which their impairments compromise their ability to independently initiate, sustain, and complete activities. In general, if a child needs a person, a structured or supportive setting, medication, treatment, or a device to improve or enable functioning,

-8-

>the child will not be as independent as same-aged peers who do not have impairments. We will generally find that such a child has a limitation, even if the child is functioning well with the help or support. The more help or support of any kind that a child receives beyond what would be expected for children the same age without impairments, the less independently the child functions, and the more severe we will find the limitation to be." 2009 WL 396032, *5.

ALJ Devlin did not address Mr. Doway's opinion that A.A.M. needed to have a highly structured setting to prevent him from being "quite troublesome". As SSR 09-02p recognizes, such supports can be critical to determining the severity of the imitation. Since Mr. Doway did not complete the portion of the form concerning the domain of interacting and relating to others, and his comments indicated that A.A.M. would be "quite troublesome" without a highly structured setting, I am unable to conclude, without some explanation from ALJ Devlin, that his opinion diverges from Dr. Collins-McGowan's opinion that A.A.M. had a marked limitation in this domain.

Likewise, it is not clear that ALJ Devlin properly applied SSR 09-01p in evaluating Ms. Bickem's opinion. SSR 09-1p instructs that:

>"the rating of the domain is not an 'average' of what activities the child can and cannot do. When evaluating whether a child's functioning is age appropriate, adjudicators must consider evidence of all of the child's activities. We do not 'average' all of the findings in the evidence about a child's activities to come up with a rating for the domain as a whole. The fact that a child can do a particular activity or set of activities relatively well does not negate the difficulties the child has in doing other activities." SSR 09-1p, 2009 WL 396031, *10.

Here, under the domain of acquiring and using information, Ms. Bickem assessed plaintiff with a "serious problem" in the function of expressing ideas in written form. [7], p. 186. However, as plaintiff argues, ALJ Devlin overlooked that finding, erroneously stating that plaintiff "only had slight to obvious problems" (id., p. 19) in the functions of that domain.

Plaintiff's Memorandum of Law [8-1], p. 24.  Without an accurate assessment of Ms. Bickem's opinion, I cannot conclude that ALJ Devlin properly weighed it.

ALJ Devlin also erred in his characterization of the record by stating in the domain of interacting and relating with others, that Ms. Bickem "opined that he had no problems in this area, except at times, he would bully other students and make threats".  [7], p. 21. Contrary to that characterization of the evidence, in addition to her comments about A.A.M.'s bullying, Ms. Bickem found that plaintiff had "serious problems" playing cooperatively with other children, making and keeping friends, and expressing anger.  Id., p. 188.  Again, without an accurate assessment of Ms. Bickem's opinion, I cannot conclude that ALJ Devlin properly weighed it.

Since it is not clear whether ALJ Devlin properly assessed the opinions of Ms. Bickem and Mr. Dowa (both of which he heavily relied upon in discounting Dr. Collins-Gowan's opinion), I am unable to conclude that he properly weighed that opinion.  While I must accept the ALJ's reasonable interpretation of evidence, these factual errors render ALJ Devlin's opinion unsupported by substantial evidence. See Pratts v. Chater, 94 F.3d 34, 38 (2d Cir. 1996) (the ALJ "committed several factual errors in evaluating the medical evidence" which resulted in the decision denying disability benefits not being supported by substantial evidence).

ALJ Devlin also gave significant weight to Dr. Ransom's opinion.  However, "the ALJ cannot rely solely on [the] RFCs [of the consulting examiners] as evidence contradicting the treating physician RFC. This is because an inconsistency with a consultative examiner is not sufficient, on its own, to reject the opinion of the treating physician". Cabibi v. Colvin, 50 F. Supp. 3d 213, 234 (E.D.N.Y. 2014). Indeed, "[t]he Second Circuit has repeatedly stated that when there are conflicting opinions between the treating and consulting sources, the 'consulting

physician's opinions or report should be given limited weight'". Harris v. Astrue, 2009 WL 2386039, *14 (E.D.N.Y. 2009) (*quoting* Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990)).

       Based upon my conclusion that ALJ Devlin did not properly weigh the medical opinion evidence, I cannot conclude that substantial evidence supports his conclusion that A.A.M. did not have an impairment or combination of impairments that functionally equaled the severity of the listings – *i.e.*, had less than two marked limitations in the six functional equivalence domains.

**D.**       **Should this Case be Remanded for a Calculation of Benefits?**

       Plaintiff requests that I remand this case for calculation of benefits or alternatively for further administrative proceedings. Where "no useful purpose would be served . . . by a remand", a court may remand for a calculation of benefits. Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980). Hence, "[r]eversal for calculation of benefits is appropriate only if the record contains persuasive proof of disability, and a remand for further evidentiary proceedings would serve no useful purpose". Harry L. v. Commissioner of Social Security, 2019 WL 3937224, *5 (N.D.N.Y. 2019), adopted, 2019 WL 3934952 (N.D.N.Y. 2019).

       "Though a district court has discretion to do so, remanding solely for the calculation of benefits is considered an 'extraordinary action'". Catsigiannis v. Astrue, 2013 WL 2445046, *5 (E.D.N.Y. 2013). *See* Simpson v. Saul, 2019 WL 4183912, *8 (W.D.N.Y. 2019) (denying request for a remand for a calculation of benefits where it was the third action seeking judicial review of the Commissioner's denial of coverage, but the record was not so obvious as to call for finding of disability).

I find that the record falls short of providing pervasive evidence that A.A.M. is disabled. Therefore, this is not a case that qualifies for the "extraordinary action" of a calculation of benefits.

## CONCLUSION

For these reasons, plaintiff's motion for judgment on the pleadings [8] is granted to the extent that this case is remanded for further proceedings, consistent with this Decision and Order, but is otherwise denied, and the Commissioner's motion for judgment on the pleadings [13] is denied.

**SO ORDERED**.

Dated: July 28, 2020

/s/Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge